UNITD STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOSE ERBO,                                              :
                                                        :
               Petitioner,                       :
                                                        :          08 CIV. 2881 HB
               -against-                         :
                                                        :          OPINION & ORDER
UNITED STATES OF AMERICA                                :
                                                        :
               Respondent.                       :
------------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., United States District Judge**[*]:

    *Pro Se* petitioner Jose Erbo ("Erbo" or "Petitioner") moves pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence to six consecutive terms of life imprisonment followed by a consecutive 45-year sentence and, in the alternative, for a new trial. Petitioner asserts three bases for relief: (1) ineffective assistance of counsel; (2) trial counsel's failure to argue at sentencing that the United States could not sentence him to a term exceeding 30 years based on the conditions of his extradition; and (3) newly discovered evidence that, in Petitioner's view, mandates that his case be reopened. For the reasons that follow, Petitioner's motion is DENIED.

## I.  BACKROUND

    On February 4, 1999, the Government charged Petitioner in a seventeen-count indictment, which included charges of racketeering, murder, and conspiracy to commit murder in aid of racketeering. In September 1999, Petitioner was convicted on weapons charges in the Dominican Republic and sentenced to two-years' imprisonment. Upon his completion of that sentence in April 2001, the Dominican Republic surrendered Petitioner to the United States pursuant to an extradition request. Petitioner subsequently pled not guilty, and trial commenced on May 9, 2002.

    At trial the Government proved that between 1991 and 1997, Erbo headed a violent gang known as "Tito's Crew." *U.S. v. Erbo*, No. 97 CR. 1105, 2006 WL 2165739, at *1, (S.D.N.Y. July 31, 2006). Under Erbo's leadership, Tito's Crew sold cocaine and crack, performed both contract murders "for hire," and non-contractual murders in furtherance of its narcotics

---

[*] Antonio Reyes, a Spring 2009 intern in my Chambers and a second-year law student at the Benjamin N. Cardozo School of Law, provided substantial assistance in the research and drafting of this opinion.

1

trafficking activities.[1] *Id.* (citing Tr. 198-99.) and developed a signature style of assassination: members of Tito's Crew rode motorcycles and wielded automatic weapons to carry out executions. Tr. 198-99, 296-97. The Government called approximately 20 witnesses to testify at Petitioners trial, including Miguel Feliz ("Feliz"), a former member of Tito's Crew who testified that he participated in murders with Petitioner, Tr. 199-200, including murders pursuant to contracts from an individual known to him as "Leo," who himself worked for a man known as "the Colombian." Tr. 277-78. Feliz testified that he had never met the Colombian, and did not know his true identity, but that he later learned that the Colombian supplied drugs to Tito's Crew. Tr. 277. Feliz testified that he participated in about 14 or 15 murders with Erbo, and that on one occasion he shot the victim himself. Tr. 200, 205.

At trial, the Government also called two other cooperating witnesses, including Santiago Diaz, who supplied cocaine to Tito's Crew and who participated in several murders with Erbo. The Government's case also included testimony from law enforcement agents who participated in the investigation, eyewitnesses to some of the murders, crime scene evidence and the testimony of a ballistics expert who determined that the same two firearms were used in many of the crimes committed by Tito's Crew.

On May 23, 2002, the jury found Petitioner guilty of racketeering, in violation of 18 U.S.C. § 1962(c), conspiring to violate racketeering laws, in violation of 18 U.S.C. § 1962(d), conspiring to commit and committing murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a), using and carrying firearms in connection with the murders and conspiracies to commit murder, in violation of 18 U.S.C. § 924(c), and conspiring to distribute and possess with the intent to distribute cocaine and crack, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. On October 17, 2002, I sentenced Petitioner to six consecutive terms of life imprisonment to be followed by a consecutive 45-year sentence. On July 31, 2006, I denied Petitioner's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, as his arguments on the basis of newly discovered evidence and alleged violations of *Brady*[2] and *Giglio*[3] were unavailing.

Petitioner appealed his conviction to the United States Court of Appeals for the Second Circuit where he unsuccessfully argued that: (1) this Court violated his Sixth Amendment right

---

[1] Citations to "Tr." refer to the trial transcript.
[2] *Brady v. Maryland*, 373 U.S. 83 (1963).
[3] *Giglio v. United States*, 405 U.S. 150 (1972).

to confrontation by admitting into evidence the plea allocutions of several of his co-conspirators and the autopsy reports of his victims; (2) the terms of his extradition from the Dominican Republic to the United States limit his sentence to thirty years' imprisonment; (3) the jury instruction concerning accomplice testimony was insufficient; (4) this Court erred by permitting the Government to question Miguel Feliz about uncharged homicides and then limiting Petitioner's cross-examination of Feliz; and (5) his sentence should be recalculated in light of the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005). *U.S. v. Feliz,* 201 Fed.Appx. 814, 815-16 (2d Cir. 2006). The Supreme Court denied Petitioner's Writ of Certiorari on February 26, 2007. *Erbo v. U.S.*, 127 S.Ct. 1323 (2007).

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255") relief is provided on the ground that a prisoner is in custody in violation of the Constitution or laws or treaties of the United States.[4] *See Davis v. United States*, 94 S.Ct. 2298, 2304 (1974). To prevail on a § 2255 claim, petitioner must show either that (1) his sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *See Woodard v. United States*, No. 04 CIV 9695, 2005 U.S. Dist. LEXIS 26802, at *6 (S.D.N.Y. Nov. 8, 2005) (citing *Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002)); 28 U.S.C. § 2255. The statute further provides that if any of the grounds enumerated above are present, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

## III.   DISCUSSION

### A.  *Ineffective Assistance of Counsel*

Petitioner seeks an order vacating his conviction on the grounds that he did not receive effective assistance of counsel as guaranteed by the Sixth Amendment. "The benchmark for

---

[4]  28 U.S.C.§ 2255 provides, in pertinent part:
> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2007).

judging any claim of ineffective[] [assistance of counsel is] . . . whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord Wiggins v. Smith*, 539 U.S. 510 (2003). Thus, to prevail on an ineffective assistance of counsel claim, the defendant must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) he was prejudiced by his counsel's deficient representation. *Strickland,* 466 U.S. at 687. The proper measure of an attorney's performance is "[r]easonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Prejudice is shown if, but for the deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *Id.* at 534. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* Thus, an error by Petitioner's counsel, even if deemed professionally unreasonable, does not warrant setting aside the judgment if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691. "In applying this standard, a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Gaskin,* 364 F.3d 438, 468 (2d Cir. 2004)

Petitioner alleges that Ramon Rodriguez, Thelma Deleon, Lilly Castillo and Ramon Martinez are witnesses who may have been involved in three of the seven murders for which he was convicted and should have been called by his counsel at trial.[5] Petitioner also maintains that his trial counsel should have interviewed Dionis Castillo and Daisy Guzman. In his traverse, Petitioner argues that his trial counsel's failure to request a continuance of the trial meant that counsel had only seven weeks to prepare for trial and provided ineffective assistance because, *inter alia*, counsel did not interview the family members of the victims or the eyewitnesses. Petitioner assumes that the testimony of the witnesses who were not called would have disproved his involvement in certain of the murders and thus, had the witnesses been called, the outcome of the trial would have been different. Consequently, Petitioner maintains that his trial counsel's

---

[5] In his traverse, Petitioner further contends that the following individuals were prepared to "present their testimony in such a way as to exonerate the [P]etitioner" and are still prepared to testify: Daisy Cepeda, Johnny Martinez, Yolanda Rodriguez, Daisy Guzman, Mirnas Rivas, Altagracia Betances, Altagracia Rodriguez-Bizono; Dionis Castillo; Ramon Rodriguez; and Ramon Velasquez a/k/a the "Columbian." However, Petitioner supplies no information about what testimony such potential witnesses would have provided, let alone how such testimony would have exonerated him.

failure to investigate and present the testimony witnesses, constitutes ineffective assistance of counsel in violation of the Sixth Amendment.

However, the decision by Petitioner's trial counsel's decision not to call certain witnesses was reasonable under *Strickland*. 466 U.S. at 691. The Second Circuit has clearly held that "counsel's decision as to 'whether to call specific witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in professional representation.'" *U.S. v. Best,* 219 F.3d 192, 201 (C.A.2 (2d Cir. 2000) (quoting *United States v. Schmidt,* 105 F.3d 82, 90 (2d Cir.), *cert. denied,* 522 U.S. 846, (1997)); *see also United States v. Smith,* 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial" (citation and internal quotation marks omitted)).

Here, Petitioner does not identify any specific testimony that could have been provided by Deleon, Rodriguez, or Martinez that would have exonerated him from his role in the three murders in which they are alleged to have been involved. For example, Petitioner claims that Thelma Deleon was arrested for two of the murders charged in Petitioner's indictment and that she "had motive and opportunity" to kill the victims because they owed money to a drug ring that she operated. Pet.'s Br. at 26. But Petitioner not only fails to identify any specific testimony that Deleon might have provided at trial, he fails to even suggest that she would have been available and willing to testify. Furthermore, Petitioner contends that evidence obtained during the search incident to Ms. Deleon's arrest "could have constituted exculpatory evidence" but does not identify of what such evidence might have consisted. *Id.* Similarly, Petitioner maintains that Ramon Martinez "once hinted that he was involved" in one of the murders for which Petitioner was convicted. Pet.'s Br. at 10. In light of the "highly deferential" scrutiny that is properly applied to an ineffective assistance of counsel claim, the foregoing contentions fail to identify any "acts or omissions of counsel that are alleged not to have been result of reasonable professional judgment," *Strickland*, 466 U.S. at 691.

Next, Petitioner argues that so-called "alibi witnesses", Lilly Castillo, Ramon Rodriguez, Dionis Castillo and Daisy Guzman "would have contradicted all [the] [G]overnment's cooperator's testimonial statement[s] regarding the alleged contract murders charged in Petitioner's indictment" and that his trial counsel's representation fell below reasonable professional standards for failing to locate such individuals in preparing for trial. But again,

Petitioner provides no allegations whatsoever as to *how* these so-called "alibi witnesses" would have exonerated him.  Finally, Petitioner fails to show how a continuance would have permitted his trial counsel to investigate and interview witnesses whose testimony would have been likely to affect the outcome of his case.

Contrary to Petitioner's view, this Court finds nothing to suggest that the decision of Petitioner's trial counsel not to investigate and present the testimony of the potential witnesses was other than the result of reasonable professional judgment.  Specifically, Petitioner fails to point to any credible reason why his trial counsel should have believed these witnesses would have assisted in his defense or for that matter that they were available.  Further, Petitioner's counsel may reasonably have thought that the time and effort needed to locate the witnesses and prepare them for trial would have been futile or he may have made a strategic choice not to call the witnesses because he harbored doubts about their credibility.  "[A] defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate." *Strickland*, 466 U.S. at 695.

Moreover, even if the failure to investigate and procure the testimony of the individuals identified above constituted attorney performance below the objective standard of reasonableness, which in the Court's view it does not, Petitioner cannot establish that he was prejudiced by his trial counsel's conduct.  Petitioner fails to identify *how* these potential witnesses would have changed the outcome of the trial in light of the overwhelming evidence which included the testimony of eye-witnesses to the murders, ballistics and crime scene experts, and Petitioner's own co-conspirators.  Therefore, this Court finds that counsel's decision on this score did not amount to an "error so serious that [his] counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 667.

## B. *Extradition Arguments*

Petitioner argues that, based on the "principle of speciality,"[6] conditions of his extradition and the extradition treaty between the Dominican Republic and the United States limit his

---

[6] Under the " 'principle of speciality' . . . 'an extradited defendant may not be tried for a crime not enumerated in the applicable extradition treaty.' *United States. v. Baez,* 349 F.3d 90, 92 (2d Cir. 2003) (quoting *United States v. Campbell,* 300 F.3d 202, 208-09 (2d Cir. 2002)). 'Based on international comity, the principle of speciality generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country.' *Id.*  When imposing sentence on an extradited defendant, '[c]ourts should accord deferential consideration to the limitations imposed by an extraditing nation in an effort to protect United States citizens in prosecutions abroad.' *Id.* at 93."

sentence in this country to a maximum of 30 years. Pursuant to a request by the United States, "the Dominican Republic ordered Erbo extradited in an Executive Order, which, as translated, states in pertinent part:

> Pursuant to Article 4 of Law No. 489, dated October 22, 1969, on Extradition, modified by Law No. 278-98, dated July 29, 1998, the Executive Branch is legally qualified to grant the extradition of a Dominican citizen in those cases where there is in existence an Extradition Agreement between the petitioning Government and the Dominican Government that, furthermore, establishes the principle of reciprocity."

*Feliz,* 201 Fed.Appx. at 816. Petitioner notes, as he did on appeal, that this law, citied in his extradition decree, provides that "[i]n extradition treaties signed by the Dominican State with other States, when the extradition with a national is granted, no penalty greater than the maximum established in this country, which at the moment this law enters into force is thirty years, shall be imposed.'" Pet.'s Br. at 43. Petitioner argues that, based on this statutory language, his sentence of six consecutive terms of life imprisonment violates the United States-Dominican Republic extradition treaty.

On direct appeal, Petitioner unsuccessfully raised this very argument.[7] It is firmly established that one cannot use a "§ 2255 petition . . . to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)(quoting *Cabrera v. United States,* 972 F.2d 23, 25 (2d Cir.1992); *see also United States v. Perez,* 129 F.3d 255, 260 (2d Cir.1997), *cert. denied,* 525 U.S. 953 (1998). Reconsideration of issues previously addressed on direct appeal "[i]s permitted *only* where there has been an intervening change in the law and the new law would have exonerated . . . [the] defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States,* 622 F.2d 1090, 1092 (2d Cir.1980), *cert. denied,* 450 U.S. 923 (1981). Petitioner does not identify, nor is this Court aware of any intervening change in the law concerning extradition that would have exonerated him had such law been in effect before the appellate court affirmed his conviction and sentence. Accordingly, Petitioner is collaterally estopped from raising his extradition

---

[7] The Second Circuit rejected Petitioner's extradition argument providing that "[t]hough it speaks of extradition," the statute on which Erbo relies "cannot bind the United States. '[N]o nation may unilaterally bind another by sheer force of its statutory enactments. . . .'" *Feliz,* 201 Fed.Appx. at 817 (quoting *U.S. v. Banks,* 464 F.3d 184, 192 (2d Cir. 2006)). The Second Circuit further found that Erbo did not "cite any evidence the Dominican government otherwise conditioned Erbo's extradition on the potential length of his sentence" and that this Court "did not offend the principle of specialty in sentencing Erbo to terms of life imprisonment, nor was Erbo prejudiced by his trial counsel's failure to object on this ground." *Id.*

arguments here under § 2255.

### C. *Petitioner has not provided grounds sufficient to reopen his case*

Petitioner avers that an affidavit signed by one Ramon Velasquez submitted with his petition, constitutes new evidence that requires his case to be reopened. At Petitioner's trial, the Government proved that four of the murders with which Petitioner was involved were contracted to Petitioner's crew from "the Colombian." In his Rule 33 motion for a new trial, Petitioner argued that the Government violated its *Brady* obligations by failing to disclose the identity of "the Colombian." *U.S. v. Erbo*, No. 97 CR. 1105, 2006 WL 2165739, at *2 (S.D.N.Y. July 31, 2006). As the Government argued in opposition to Petitioner's Rule 33 motion and as Petitioner now admits, the individual referred to during Petitioner's trial as "the Colombian" was in fact Ramon Velasquez. This Court denied Petitioner's motion, finding that the Government's alleged failure to disclose the true identity of "the Colombian" did not warrant a new trial. *Id.* at * 4. This Court held that, because Petitioner produced no evidence that Velasquez would have been willing to testify on his behalf, or what such testimony would have revealed, Petitioner did not establish a reasonable likelihood that such error affected the outcome of his case. *Id*. Petitioner argues here that the affidavit is new evidence that establishes that Velasquez is ready and willing to testify that he did not order the four murders that were linked to contracts from the "Columbian." Petitioner argues that, at the least, an evidentiary hearing must be held to determine the truth of the Velasquez affidavit.

Petitioner proceeds along several avenues of argument. First, Petitioner essentially reargues his Rule 33 motion by contending that the Velasquez affidavit satisfies the Court's doubts as to whether Velasquez "would have been willing to testify on Erbo's behalf." But even with the Velasquez affidavit, Petitioner fails to establish that the Government violated its *Brady* obligations. "Materiality of *Brady* evidence is established when there is a reasonable likelihood that disclosure of the evidence would have affected the outcome of the case, or would have put the case in such a different light as to undermine confidence in the outcome." *U.S. v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (internal citations omitted). "The omitted evidence is assessed in light of the entire record." *Id.* In light of the all of the evidence that linked Petitioner to the four murders, testimony from the "Columbian" that he did not in fact order the murders would not have "put the case in such a different light as to undermine confidence in the outcome." *Id.* Regardless of who ordered the murders, there was substantial evidence that Petitioner in fact

habeas relief.'" *Pimentel*, 2001 WL 682452 at *7 (*quoting Townes v. Lacy,* 99 Civ. 9635, 2001 WL 682452, at *3 (S.D.N.Y. June 18, 2001). Because this Court finds that no constitutional violation occurred at Petitioner's trial, the Velasquez affidavit, in and of itself, is an insufficient basis for federal habeas relief. *See Herrera*, 506 U.S. at 403. Consequently, the Velasquez affidavit does not entitle Petitioner to habeas relief.

## IV. CONCLUSION

For the foregoing reasons, the petition for a writ of *habeas corpus* is DENIED. A certificate of appealability will not issue because Petitioner has failed to make a substantial showing of the denial of a federal right. *See* 28 U.S.C. § 2253. The Clerk is directed to close this case and remove it from my docket.

**SO ORDERED.**
**New York, New York**
**August \_\_\_\_, 2009**

_____
U.S.D.J.

10